**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

CORY P. DIX and RUBY E. DIX,

                      **Plaintiffs,**

  vs.                                               **5:18-cv-891
(MAD/DEP)**

**KATHLEEN A. PETERS** and **AUTO-
OWNERS INSURANCE CO.,**

                      **Defendants.**

---

**APPEARANCES:**                                **OF COUNSEL:**

**NAZARIAN LAW**                         **ARMEN J. NAZARIAN, ESQ.**
77 State Street
Phoenix, New York 13135
Attorney for Plaintiffs

**BURGIO, CURVIN & BANKER**        **HILARY C. BANKER, ESQ.**
496 Main Street
Buffalo, New York 14202
Attorneys for Defendant Kathleen
A. Peters

**VIGORITO, BARKER, PATTERSON,**   **GREGG D. WEINSTOCK, ESQ.**
**NICHOLS & PORTER, LLP**
300 Garden City Plaza, Suite 308
Garden City, New York 11530
Attorneys for Defendant Auto-
Owners Insurance Company

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiffs commenced this action against Defendants Kathleen A. Peters and Auto-Owners Insurance Company ("Auto-Owners") on July 31, 2018, asserting claims arising from an accident that occurred in Clay, New York on or about September 29, 2016. Peters is the alleged tortfeasor

and Auto-Owners is Plaintiffs' insurance carrier for uninsured/underinsured motorist coverage. Before the Court is Defendant Auto-Owners' motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, and Defendant Peters' motion to dismiss under Rule 12(b)(6). The parties dispute whether Virginia or New York law should apply and whether this district or the Eastern District of Virginia is the proper forum.

## II. BACKGROUND

Factually, this case is straightforward. Cory Dix, a resident of Virginia, was involved in a motor-vehicle accident in New York with Kathleen Peters, a resident of New York. *See* Dkt. No. 1 at ¶¶ 1, 3, 11. Auto-Owners is a corporation organized in Michigan, with a principal place of business in Michigan. *Id*. at ¶ 4. Auto-Owners provided underinsured motorist coverage to Plaintiffs at the time of the accident. *Id*. at ¶ 21. Defendant Peters' liability carrier, USAA Insurance, exhausted her policy limits in settlement of Plaintiff Cory Dix's bodily injury claim. *Id*. at ¶ 22. Plaintiffs seek to recover uninsured/underinsured motorist benefits from Auto-Owners.

## III. DISCUSSION

Procedurally, this case is anomalous because of the application of Virginia law and procedure to the insurance policy while New York law applies to the accident. The case is further complicated by Defendant Peters being a resident of New York, and thus likely not subject to the jurisdiction of a court sitting in Virginia. Defendant Peters argues that if the underinsurance claim were brought under New York law, her participation would not be required. *See* Dkt. No. 25 at 3. Auto-Owners asserts it has no substantial contact with New York, and Plaintiffs have offered no evidence to the contrary. *See* Dkt. No. 24 at ¶ 2. The only basis for the Court to exercise jurisdiction over Auto-Owners would be on the theory that Auto-Owners' contractual

duty to defend extends to New York because the accident occurred in New York and the defendant driver resides in New York. However, because the Court finds that this action cannot proceed against Defendant Peters, the Court finds no basis for the exercise of jurisdiction over Auto-Owners.

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

B.  **Choice of Law**

A district court applies the law of the forum state when determining the applicable law. *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) (citation omitted). "In New York, the forum state in this case, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Curly v. AMR Corp.*, 153 F.3d 5, 11 (2d Cir. 1998). There is no choice-of-law provision governing the entirety of the insurance contract in this case. However, Part C of the policy, which provides for uninsured motorists coverage, states that Auto-Owners "will pay, in accordance with Va. Code Ann. Section 38.2-2206, damages which an 'insured' . . . is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' or an 'underinsured motor vehicle' . . . ." *See* Dkt. No. 20-5 at 42. This language clearly evinces the intent of the contracting parties that at least the underinsured motorist coverage portion of the policy be governed by Virginia law. Thus, the Court need not conduct a further conflict-of-laws analysis. *See Ministers and Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 476 (2015).

C.  **Virginia Uninsured Motorist Law**

Virginia Code § 38.2-2206(F) details the process for recovering uninsured and

4

underinsured coverage benefits. The section provides as follows:

> If any action is instituted against the owner or operator of an uninsured or underinsured motor vehicle by any insured intending to rely on the uninsured or underinsured coverage provision or endorsement of this policy under which the insured is making a claim, then the insured shall serve a copy of the process upon this insurer in the manner prescribed by law, as though the insurer were a party defendant. The provisions of § 8.01-288 shall not be applicable to the service of process required in this subsection. The insurer shall then have the right to file pleadings and take other action allowable by law in the name of the owner or operator of the uninsured or underinsured motor vehicle or in its own name. Notwithstanding the provisions of subsection A, the immunity from liability for negligence of the owner or operator of a motor vehicle shall not be a bar to the insured obtaining a judgment enforceable against the insurer for the negligence of the immune owner or operator, and shall not be a defense available to the insurer to the action brought by the insured, which shall proceed against the named defendant although any judgment obtained against an immune defendant shall be entered in the name of "Immune Defendant" and shall be enforceable against the insurer and any other nonimmune defendant as though it were entered in the actual name of the named immune defendant. Nothing in this subsection shall prevent the owner or operator of the uninsured motor vehicle from employing counsel of his own choice and taking any action in his own interest in connection with the proceeding.

Va. Code. § 38.2-2206(F). The Code further provides that a notice must be issued to any defendant who settles to available liability-insurance limits:

> Any settlement between the injured person or his personal representative, any insurer providing liability coverage applicable to the claim, and the underinsured motorist described in subsection K shall be in writing, signed by both the injured person or his personal representative and the underinsured motorist, and shall include the following notice to the underinsured motorist, which must be initialed by the underinsured motorist:
>
> "NOTICE TO RELEASED PARTY: Your insurance company has agreed to pay the available limits of its insurance to settle certain claims on your behalf. This settlement secures a full release of you for all claims the claimant/plaintiff has against you

arising out of the subject accident, as well as ensures that no judgment can ever be entered against you by the claimant/plaintiff. In order to protect yourself from subrogation by any underinsured motorist insurer, you are agreeing to cooperate with the underinsured motorist benefits insurer(s).

Under this manner of settlement, the underinsured motorist benefits insurer(s) that is/are involved in this case has/have no right of subrogation against you unless you fail to reasonably cooperate in its/their defense of the claim by not (i) attending your deposition and trial, if subpoenaed, (ii) assisting in responding to discovery, (iii) meeting with defense counsel at reasonable times after commencement of this suit and before your testimony at a deposition and/or trial, and (iv) notifying defense counsel of any change in your address.

Upon payment of the agreed settlement amount by your insurance company(ies), such company shall no longer owe you any duties, including the duty to hire and pay for an attorney for you. You are not required to consent to settlement in this manner. If you do not consent to settlement in this manner, your insurance company will still defend you in any lawsuit brought against you by the claimant/plaintiff, but you will not have the protections of a full release from the claimant/plaintiff, judgment could be entered against you and may exceed your available insurance coverage, and any underinsured motorist benefits insurer would have a right of subrogation against you to recover any moneys it pays to the claimant/plaintiff.

You are encouraged to discuss your rights and obligations related to settlement in this manner with your insurance company and/or an attorney. By signing this document, you agree to consent to this settlement and to reasonably cooperate with the underinsured motorist benefits insurer in the defense of any lawsuit brought by the claimant/plaintiff.

_____ (initial)"

In the alternative, the liability insurer may send the notice to the released party by certified mail return receipt requested to the underinsured motorist at his last known address.

Va. Code. § 38.2-2206(L). Compliance with Subsection L is a prerequisite to the application of the remainder of this section.

Plaintiffs are correct that the Auto-Owners insurance policy permits them to bring suit against an underinsured motorist as a "released defendant," but only when certain conditions have been met. The relevant section of the Auto-Owners' policy provides as follows:

> We will pay, in accordance with Va. Code Ann. Section 38.2-2206, damages which an "insured" or an "insured's" legal representative is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or an "underinsured motor vehicle" because of
>
> > 1. "Bodily injury" sustained by an "insured" and caused by an accident; and
> >
> > 2. "Property damage" caused by an accident.

Dkt. No. 23-2 at 43. As this language makes clear, an application for payment of damages relating to a claim involving an "underinsured motor vehicle" must follow the procedures outlined in Virginia Code § 38.2-2206.

As discussed, Virginia Code § 38.2-2206 sets forth several conditions that must be met before such a claim can proceed. Specifically, Plaintiffs were required to settle with Defendant Peters for the available limit of her liability coverage, which was done. What Plaintiffs failed to do, however, was execute the settlement in the manner prescribed in the statute. The statute sets forth verbatim the language that is to be used when a plaintiff and the underinsured motorist are settling to the limits of the policy, so that the underinsured motorist is placed on notice that he or she will be required to continue cooperating with the plaintiff's insurance carrier or face possible subrogation. *See* Va. Code § 38.2-2206(L). This compliance entails the underinsured motorist being listed as a "released defendant," attending a deposition and trial, if subpoenaed, assisting in responding to discovery, meeting with defense counsel at reasonable times after commencement of the suit and before any testimony, and notifying defense counsel of any change in address. *See id*.

In the present matter, Plaintiffs failed to provide this notice to Defendant Peters and we now find ourselves in the exact position that the required notice is intended to avoid. In the release by USAA, Defendant Peters was released "from any liability now accrued or hereafter to accrue on account of any and all claims or causes of action which I/we now or may hereafter have for personal injuries, damage to property, loss of services, medical expenses, contribution indemnification, losses of damages of any and every kind or nature whatsoever, now known or unknown or that may hereafter develop, by me/us sustained or received on or about <u>September 29, 2016</u> through <u>an automobile accident</u>[.]" Dkt. No. 21-2 at 2. No notice of any ongoing obligations was provided to Defendant Peters. Rather, the release unequivocally released Defendant Peters from all further potential liability and responsibilities related to the September 29, 2016 automobile accident.

Without citation to any authority, Plaintiffs argue that the "responsibility to secure her consent to settle the liability claim under Virginia law and notify her of her duty to cooperate with Auto-Owners is born solely by her own liability insurance carrier, not the Plaintiffs." Dkt. No. 23 at 21. Contrary to Plaintiffs' position, the burden was on Plaintiffs or their counsel to ensure that Defendant Peters was provided with the required notice of her duty to cooperate. It is illogical to suggest that USAA should bear the responsibility to ensure that provisions of the Auto-Owners policy are followed so that Plaintiffs would be afforded the opportunity to collect additional benefits under the Auto-Owners policy. The Auto-Owners policy was a contract between Plaintiffs and Auto-Owners, not USAA and Auto-Owners.

Moreover, the complaint and evidence submitted in support of the motion to dismiss make clear that Plaintiffs did not make their demand to Auto-Owners for underinsured benefits until months after they had settled with Defendant Peters. The complaint alleges that their demand

package was first forwarded to Auto-Owners on or about August 1, 2017, yet the release and letter confirming the settlement between Plaintiffs and Defendant Peters are dated March 10, 2017. *See* Dkt. No. 1 at ¶ 22; Dkt. No. 21-2 at 1-2. While Plaintiffs allege that Auto-Owners "had notice of the accident since December 8, 2016," they fail to allege that it was made aware of the possibility that Plaintiffs would be pursuing an underinsured claim under the Auto-Owners policy. Even assuming that the burden was on Auto-Owners to ensure Plaintiffs settled their claim against Defendant Peters in compliance with the Virginia Code (which it was not), notice to Auto-Owners about the existence of this claim would necessarily be required before any such duty would attach. It is axiomatic that only parties to a contract can be bound by that contract. Therefore, without first obtaining Defendant Peters' written consent to proceed with this action with her acting as the released defendant, Defendant Peters is not subject to suit in the present action. The general release that Defendant Peters signed released her from all obligations stemming from the underlying accident. Had Defendant Peters or her insurance carrier known of the extensive continuing obligations that would be placed on Defendant Peters in connection with a forthcoming underinsured motorist claim, they may very well have made a different determination and not settled the case. Unfortunately, Defendant Peters and USAA were not presented with that possibility.

Having failed to comply with the notice requirements of the Virginia Code, as incorporated into Plaintiffs' auto-insurance policy, the Court finds that Defendant Peters must be dismissed from this action.

**D.  Claims Against Defendant Auto-Owners**

Defendant Auto-Owners contends that it should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because it is a Michigan corporation that has no minimum

contacts, ties, or relations with the State of New York. *See* Dkt. No. 20-2 at 2 (citing *International Shoe v. Washington*, 326 U.S. 310, 319 (1945)). Auto-Owners argues that to hale it into litigation in a New York forum would violate the "'traditional notions of fair play and substantial justice' embodied in the Due Process Clause of the Fourteenth Amendment." *Id.* at 2-3 (quotation and other citation omitted).

"'A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.'" *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). "'[I]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quotations and citation omitted). "[H]owever, the showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Id.* (quotations and other citation omitted). "Where, as here, a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction.'" *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quotation omitted); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). "This prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013), *cert. denied sub nom O'Neill v.*

10

*Al Rajhi Bank*, 134 S. Ct. 2870, 189 L. Ed. 2d 848 (2014) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *accord Southern New England Tel.*, 624 F.3d at 138.

"In evaluating whether the requisite showing has been made, [courts] construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013); *see also Chloé*, 616 F.3d at 163. Where, as here, personal jurisdiction is challenged by way of a motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the court must "'assume[ ] the truth of the plaintiff's factual allegations,'" *Dorchester*, 722 F.3d at 85 (quotation and other citation omitted), and avoid resolving any "dispute[s] over the authenticity of [the plaintiff's] evidence[.]" *Dorchester*, 722 F.3d at 86. However, courts "'will not draw argumentative inferences in the plaintiff's favor' ..., nor ... 'accept as true a legal conclusion couched as a factual allegation[.]'" *In re Terrorist Attacks*, 714 F.3d at 673 (quotations and other citations omitted). Finally, on a motion to dismiss pursuant to Rule 12(b)(2), courts may consider materials outside the pleadings "without converting [the] motion to dismiss for lack of personal jurisdiction into a motion for summary judgment." *Dorchester*, 722 F.3d at 86.

In determining whether personal jurisdiction exists, courts employ a two-step inquiry. First, the court must determine whether there is a "statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 129 (2d Cir. 2013) (citation omitted). Second, the court must determine "whether personal jurisdiction comports with due process protections established under the Constitution." *Eades v. Kennedy, PC Law Offices*, 799

F.3d 161, 168 (2d Cir. 2015) (citation omitted).[1]

The constitutional due process inquiry has two steps. "The Court must determine, first, whether the defendant has sufficient minimum contacts with the forum (the 'minimum contacts') inquiry; and, if so, second, whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' (the 'reasonableness' inquiry)." *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 328 (S.D.N.Y. 2017) (quoting *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945))).

In assessing a defendant's minimum contacts, a court evaluates the "quality and nature" of the defendant's contacts. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). The court considers these contacts in totality, with the crucial question being whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" "such that [the defendant] should reasonably anticipate being haled into court there." *Id.* (quoting *Burger King*, 471 U.S. at 474–75, 105 S. Ct. 2174). The inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)).

The defendant's conduct in the lawsuit must create a "substantial connection" with the forum. *Id.* In evaluating this connection, the court considers the contacts that the "'defendant *himself*' creates with the forum," not the plaintiff's connections to the forum. *See id.* at 284 (citing

---

[1] In its motion to dismiss, Auto-Owners does not attack the statutory basis for the exercise of personal jurisdiction over it. As such, the Court will only address whether the exercise of personal jurisdiction over Auto-Owners comports with the relevant constitutional protections.

12

*Burger King*, 471 U.S. at 475, 105 S. Ct. 2174) (emphasis in original). Because the minimum contacts inquiry focuses on the defendant's contacts with the forum, not just the defendant's contacts with persons who reside there, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* These due process limits on personal jurisdiction "principally protect the liberty of the nonresident defendant — not the convenience of plaintiffs or third parties." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 100 S. Ct. 580, 62 L. Ed. 2d 490 (1980)). They require, overall, "that a defendant be haled into a court in a forum ... based on his own affiliation with the [forum], not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the [forum]." *Id.* at 286 (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. 2174).

When a plaintiff demonstrates the required minimum contacts between the defendant and the forum, the court then assesses the reasonableness of exercising personal jurisdiction over the defendant, *i.e.*, whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Metro. Life Ins. Co.*, 84 F.3d at 568 (citation omitted); *see also Burger King*, 471 U.S. at 476 ("Once it has been that a defendant purposefully established minimum contacts within the forum" the court may consider the contacts in light of the reasonableness factors). To do so, the court applies the five-factor test of *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987). These factors are "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co.*, 84 F.3d at 568 (citing *Asahi*, 480 U.S. at 113-14). When a court reaches the

reasonableness inquiry, it assesses the minimum contacts and the reasonableness inquiry in tandem, such that a lesser showing as to one may be tolerated if the other strongly favors an exercise of jurisdiction, and vice-versa. *Id.* (citing *Burger King*, 471 U.S. at 477) (holding that while exercise of personal jurisdiction is favored when the plaintiff has made a threshold showing of minimum contacts, it may be defeated if the defendant makes "a compelling case that the presence of some other considerations would render jurisdiction unreasonable").

In the present matter, now that Defendant Peters has been dismissed from this action, what is left is essentially an action in which Plaintiffs seek a declaration that they may recover under the Auto-Owners policy on their underinsured motorist claim. Had Plaintiffs complied with the requirements in their Auto-Owners policy, trial in the Northern District of New York would undoubtedly be proper because Auto-Owners agreed to such a possibility in selling insurance policies in Virginia with the knowledge that Virginia Code § 38.2-2206 could subject them to suit in any jurisdiction covered by the policy. The Auto-Owners' policy defines the "policy territory" as covering, among other locations, "[t]he United States of America, its territories or possessions[.]" Dkt. No. 23-2 at 30, 42. However, since the remaining case primarily sounds in contract and not tort, this is not a suit as contemplated in Virginia Code § 38.2-2206.

In *Haywood v. Travelers Indem. Co. of Am.*, No. 05-cv-198, 2006 WL 2860588 (D. Mont. Oct. 3, 2006), the plaintiff instituted an action to recover underinsured motorist benefits as an insured under a general business insurance policy issued to his business by Defendant Auto-Owners Insurance Company. *See id.* at *1. The plaintiff had purchased the policy from Auto-Owners in Colorado while he was a resident of that state. *See id.* The plaintiff provided a Colorado address on the application and provided an alternative billing address for his business in Victor, Montana. *See id.* Subsequent to the issuance of the policy, the plaintiff relocated to

14

Montana. *See id.* After his relocation, the plaintiff was injured in an automobile accident in Montana. *See id.* at *2. Having exhausted the policy limits available under the liability insurance policy of the tortfeasor, the plaintiff sought underinsured motorist benefits under his Auto-Owners policy. *See id.*

Auto-Owners moved to dismiss the suit based on lack of personal jurisdiction, arguing that it is an Ohio corporation, maintains no offices in Montana, and has no customer service agents or any presence in Montana. *See id.* In dismissing the case, the court held that, "for purposes of specific personal jurisdiction, 'the foreseeability of an injury in another state is not a sufficient benchmark for exercising personal jurisdiction in a breach of contract action filed by the insured against the insurer.'" *Id.* at *5 (quoting *Carter v. Mississippi Farm Bureau Casualty*, 109 P.3d 735, 740 (Mont. 2005)). While the court acknowledged that an insurer's duty to indemnify and defend could be sufficient to confer personal jurisdiction throughout its area of coverage, the court found that where the insured is suing its regional insurer in a foreign state for breach of contract, the place of the accident is immaterial for purposes of jurisdiction, as the action is one to enforce a contract. *See id.* at *4.

In *Brisco v. Schreiber*, No. 06-cv-132, 2010 WL 918090 (D. Vi. Mar. 10, 2010), the defendant, allegedly under the influence of alcohol and driving on the wrong side of the road in St. Croix, struck the vehicle in which the plaintiffs were occupants. *See id.* at *1. The defendant was underinsured and his insurance carrier paid the limits of its insurance policy to the plaintiffs for the damages incurred from the accident. *See id.* At the time of the accident, Charter Oak was the sole insurer of an automobile insurance policy issued to the plaintiffs, and the plaintiffs made a demand to it to pay the plaintiffs the underinsurance policy limits. *See id.* When Charter Oak refused, the plaintiffs brought suit alleging breach of contract. *See id.*

15

Charter Oak moved to dismiss the suit against it based on lack of personal jurisdiction, arguing that it is a Connecticut corporation and that it is not licensed to and does not do business in the United States Virgin Islands. *See id.* at *2. Further, Charter Oak argued that it does not write insurance policies and does not have a registered agent upon whom process can be served in the Virgin Islands. *See id.* Moreover, the automobile insurance policy was issued in New York, which was the plaintiffs' domicile. *See id.* In granting the motion, the court held that the record was devoid of evidence that Charter Oak had taken any action "'purposefully directed toward the forum state' with respect to the instant litigation or that Charter Oak participates in any ongoing business activity in the Virgin Islands." *Id.* at *5 (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009)) (other citation omitted). The court further held that the mere fact that the insurance coverage of the New York plaintiffs extended to U.S. territories such as the Virgin Islands is not sufficient to show a "purposeful" action directed toward the Virgin Islands. *See id.* As such, the court held that the exercise of personal jurisdiction over Charter Oak would violate the protections offered by the due process clause. *See id.*

Plaintiffs rely on *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990) in support of its position. In *Farmers*, the Ninth Circuit held that because the insurer contracted to indemnify and defend claims against the insured, the insurer had availed itself of the forum by including a nationwide territory clause in the insured's policy. *See Farmers*, 907 F.2d at 912-14; *see also Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court ex rel. County of Clark*, 134 P.3d 710, 714 (Nev. 2006) (relying on *Farmers*, the Nevada Supreme Court held that a nationwide territory clause subjected an insurer to personal jurisdiction in a bad faith action). However, more recently, the Ninth Circuit has clarified the narrow scope of its holding in *Farmers*. *See King v. American Mut. Ins. Co.*, 632 F.3d 570, 580 n.10 (9th Cir. 2011). *King*

16

addressed personal jurisdiction over an insurer in a bad faith action arising out of an accident in Montana. *See id.* at 579-80. The insurance policy at issue in *King*, executed in Colorado with Colorado residents, provided nationwide territory coverage. *See id.* at 572, 580. Relying on the Montana Supreme Court's opinion in *Carter v. Mississippi Farm Bureau Casualty Insurance Company*, 109 P.3d 735 (Nev. 2005), the Ninth Circuit in *King* found that the insurer's agreement to provide nationwide coverage was not sufficient to establish minimum contacts in a bad faith action in Montana. *See King*, 632 F.3d at 580.

In so holding, the *King* court specifically distinguished *Farmers* on the grounds that *Farmers* was an indemnity case. *See id.* By adopting the reasoning and holding of *Carter*, the Ninth Circuit suggested that a nationwide territory clause alone is insufficient to subject defendants to personal jurisdiction over any contractual dispute in any given forum. Rather, *King* indicates that the holding of *Farmers* is limited to cases arising out of defendants' duties to indemnify and defend claims in any state. *See id.*; *Carter*, 109 P.3d at 358; *see also Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1247-48 (9th Cir. 1984); *Hunt v. Auto-Owners Ins. Co.*, No. 2:15-cv-520, 2015 WL 3626579, *5 (D. Nev. June 10, 2015) ("Contracting to indemnify and defend establishes minimum contacts by creating an obligation to assist the policyholder with covered lawsuits in covered jurisdictions. However, plaintiff is suing defendants in this case based on a denial of a claim, not any duty to indemnify. Defendants' insurance contract, executed in Utah with a Utah resident, does not suffice to establish minimum contacts with Nevada for a bad faith action").

Similarly, in *Repwest Ins. Co. v. Country-Wide Ins. Co.*, 166 A.D.3d 61 (1st Dep't 2018), the Appellate Division was asked to consider the following issue: "whether an automobile liability policy's territory of coverage clause that covers any accident within the United States and

17

the occurrence of the accident in the forum state are sufficient to confer personal jurisdiction over the primary insurer of the offending vehicle." Disagreeing with and distinguishing *Farmers*, the court held that the territory clause of a foreign insurer's policy and the situs of the accident does not provide sufficient contact with the forum state involving a contract dispute. *See id.* at 66-67.

Unlike *Farmers*, the present matter is not a duty-to-defend case, it involves the issue of coverage. Auto-Owners did not purposefully avail itself of the privilege of conducting activities within New York, thereby invoking the benefits and protections of its laws. While the accident triggering this dispute did occur in New York, the minimum contacts must arise from action by "'the defendant himself,'" which create a substantial connection to the forum state. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1093 (10th Cir. 1998) (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. 2174). No such showing has been made in the present matter.

In addition to failing to establish the requisite minimum contacts, the Court also finds that the exercise of personal jurisdiction would not comport with the traditional notions of fair play and substantial justice. Having no agents or offices in New York, the exercise of jurisdiction over Auto-Owners would impose an undue burden. Further, New York has little interest in adjudicating a contract dispute involving a contract that was formed in Virginia and it would be likely more convenient for Plaintiff to adjudicate this matter in Virginia now that Defendant Peters has been dismissed.

An insurance company who issues a policy in which it agrees to defend its insured in a certain forum can undoubtedly foresee that it may have to provide a defense for its insured who is haled into court there. It does not follow, however, that by agreeing to defend in the forum, that the insurance company also by implication agrees that it will litigate disputes between it and its insured regarding the terms of an insurance contract in a foreign forum. While it is reasonably

foreseeable that an insured would be involved in litigation with a third-party in another forum, it is not necessarily foreseeable that a dispute between the insured and the insurer over an insurance contract prepared, negotiated, and executed pursuant to Virginia law in Virginia with a Virginia domiciliary would be litigated in a foreign forum where the insurer had no contacts related to the contract.

Having examined the factors above in their entirety, the Court concludes that to subject Auto-Owners to litigating this matter in New York, which has no genuine interest in the dispute and with which Auto-Owners has only tenuous contacts, would be unreasonable and inconsistent with the notions of "fair play and substantial justice." Accordingly, the Court grants Auto-Owners' motion to dismiss for lack of personal jurisdiction.

## IV. CONCLUSION

Upon consideration of the entire record, the parties' submissions and the applicable law, and for the foregoing reasons, the Court hereby

**ORDERS** that Defendant Peters' motion to dismiss for failure to state a claim is **GRANTED**; the Court further

**ORDERS** that Defendant Auto-Owners' motion to dismiss for lack of personal jurisdiction is **GRANTED**; the Court further

**ORDERS** that the Clerk of Court shall enter judgment in favor of defendants' and close this case; the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 20, 2019
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge